UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHRISTOPHER C. M. [1], | |
| v. | CASE NO. 3:23-CV-369-SJF |
| COMMISSIONER OF SOCIAL SECURITY, | |

**OPINION and ORDER**

Plaintiff Christopher C. M. ("Mr. M") seeks judicial review of the Social Security Commissioner's decision denying Mr. M's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). This Court may enter a ruling based on the parties' consent pursuant to 28 U.S.C. § 636(c)(1) and 42 U.S.C. § 405(g). [*See* DE 8, DE 19]. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision.

**I.   OVERVIEW OF THE CASE**

Mr. M applied for DIB on November 16, 2020, alleging a disability onset date in April 2012[2] and a date last insured of December 31, 2016. [*See* Administrative Record 85-86 (hereinafter "AR")]. Mr. M's application was denied initially on February 16, 2021 (AR 125), and upon reconsideration on June 25, 2021. Following a hearing on January 7,

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.
[2] Mr. M later amended his alleged onset date to April 22, 2016, leaving only an eight-month period of consideration. [*See* DE 10 at 13; AR 10].

2022, an Administrative Law Judge ("ALJ") issued an unfavorable decision on October 7, 2022 (AR 25), which affirmed the Social Security Administration's ("SSA's") denial of benefits. The ALJ's decision became the final decision of the Commissioner when the SSA Appeals Council denied his appeal on March 7, 2023. (AR 1). *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005).

Mr. M sought judicial review of the Commissioner's decision on May 4, 2023. Mr. M filed his opening brief on August 9, 2023, and the Commissioner filed a Memorandum in Support of Decision on October 26, 2023. This matter became ripe on November 9, 2023, when Mr. M filed his reply.

## II. APPLICABLE STANDARDS

### A. Disability Standard

To qualify for DIB, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity ("SGA") is defined as work activity that involves significant physical or mental activities done for pay or profit. 20 C.F.R. § 404.1572.

The Commissioner's five-step sequential inquiry in evaluating claims for DIB and SSI under the Act includes determinations of: (1) whether the claimant is engaged in SGA; (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in

2

Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform his past relevant work based on his residual functional capacity ("RFC"); and, if not, (5) whether the claimant is able to perform other work. 20 C.F.R. §§ 404.1520; 416.920.³ The claimant bears the burden of proof at every step except Step Five, where the burden shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000).

### B. Standard of Review

This Court reviews disability decisions by the Commissioner pursuant to 42 U.S.C. § 405(g). But this Court's role in reviewing social security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The question on judicial review is not whether the claimant is disabled; the Court considers whether the ALJ used "the correct legal standards and [whether] the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2007).

Accordingly, the Court must uphold the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Substantial evidence is "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence has also been understood as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir.

---

³ Regulations governing applications for DIB and SSI are almost identical and are found at 20 C.F.R. § 404 and 20 C.F.R. § 416 respectively. Going forward, this Opinion and Order will only refer to 20 C.F.R. § 404 unless explicit distinction between the DIB and SSI regulations is necessary.

3

2017). The Supreme Court has also noted that "substantial evidence" is a term of art in administrative law, and that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" in social security appeals. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court reviews the entire administrative record to determine whether substantial evidence exists, but it may not reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Accordingly, at a minimum, the ALJ must articulate his analysis of the record to allow the reviewing court to trace the path of his reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ need not address every piece of evidence in the record so long as he provides a glimpse into the reasoning behind his analysis to build the requisite "logical bridge" from the evidence to his conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).

On the other hand, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "The ALJ must confront the evidence that does not support his conclusion and support why that evidence was rejected." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). An ALJ's decision will lack sufficient evidentiary support and require remand if the ALJ "cherry-picked" the record to support a finding of non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Wilson v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014).

4

If the ALJ's decision is not supported by substantial evidence, remand is typically appropriate. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

### III.   ANALYSIS

#### A.   The ALJ's Decision

Mr. M's hearing before an ALJ took place on January 7, 2022. (AR 25). On October 7, 2022, the ALJ issued a written decision finding that Mr. M was not disabled, conducting the requisite five-step analysis for evaluating claims for disability benefits. 20 C.F.R. §404.1520.

At Step One, an ALJ's inquiry focuses on whether a claimant is engaging in substantial gainful activity. The ALJ determined that Mr. M had not engaged in substantial gainful activity from his amended alleged onset date of April 22, 2016, through his date last insured of December 31, 2016.

At Step Two, an ALJ's inquiry focuses on whether a claimant's impairments are severe. For an impairment to be considered severe, an impairment or combination of impairments must significantly limit the claimant's ability to perform basic work-related activities. 20 C.F.R. § 404.1521. The ALJ found that Mr. M suffers from the following severe impairments: degenerative joint disease of the right knee; obesity; residual effects of a cerebrovascular accident (CVA); traumatic brain injury; and major depressive disorder (20 C.F.R. 404.1520(c)). On the other hand, an impairment is

5

considered non-severe when the medical evidence establishes only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to perform basic work functions. *See, e.g.*, 20 C.F.R. § 404.1522; S.S.R. 85-28, 1985 WL 56856 (Jan. 1, 1985). The ALJ found that Mr. M had the following non-severe medically determinable impairments: a minimal to mild impairment of the shoulder, and thyroid abnormalities. Both impairments received medical treatment that did not limit Mr. M's ability to perform basic work activities. (AR 13).

At Step Three, the ALJ found that none of Mr. M's severe impairments, nor any combination of his impairments, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (AR 13). The ALJ consulted listings 1.18, 11.04, 12.02, 12.04 and SSR 19-2p. *Id.* Accordingly, before moving on to Step Four, the ALJ proceeded to determine whether Mr. M can perform his past relevant work based on his residual functional capacity ("RFC").

A claimant's RFC includes limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). The RFC is the most that an individual can do despite his limitations. 20 C.F.R. § 404.1545(a). To determine a claimant's RFC, the ALJ must consider the claimant's symptoms, their intensity, persistence, and limiting effects, and the consistency of these symptoms with the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1545(a)(1). Physical exertion levels in an RFC are classified as either sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567. The ALJ found that Mr. M had the

6

RFC to perform the full range of work at all exertional levels but with the following nonexertional limitations:

> He can frequently climb ramps or stairs; occasionally climb ladders, ropes, or scaffolds; and frequently kneel and crawl. He must avoid concentrated exposure to extreme cold, excessive vibration, and hazardous machinery. He can understand, remember and carry out short instructions; frequently interact appropriately with the general public, supervisors, co-workers, and peers during an eight-hour workday; frequently respond appropriately to changes in the work setting during an eight-hour workday; and maintain attention and concentration for two-hour segments over the course over an eight hour workday [sic]. Any time off task during the workday can be accommodated by normal breaks. He further retains the ability to apply commonsense understanding to carry out detailed but not uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations.

(AR 15-16). Based on this RFC, at Step Four, the ALJ found that Mr. M was unable to perform his past relevant work as a tractor trailer truck driver (AR 19). Accordingly, the ALJ moved on to the last step in the five-step sequential analysis.

At Step Five, while the burden of proof shifts to the Commissioner, the Commissioner need only show that the claimant can perform some type of substantial gainful work existing in the national economy in significant numbers. 42 U.S.C. § 423(d)(2)(A). ALJs typically enlist a vocational expert ("VE") to testify about which occupations, if any, a claimant can perform. *See* S.S.R. 83-12, 1983 WL 31253, at *2 (Jan. 1, 1983). VEs use information from the Dictionary of Occupational Titles ("DOT") to inform their assessments of a claimant's ability to perform certain types of work. S.S.R. 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). The VE, using the DOT, identified six representative jobs that Mr. M. could still perform with his RFC—Hand Packager; Lumber Sorter; Marking Clerk; Assembler, Small Products; Sorter; and Addresser. (AR 20).

Finding that Mr. M could make an adjustment to other work that existed in significant numbers in the national economy, the ALJ determined that Mr. M was not under a disability, as defined in the Act, from his amended alleged onset date of April 22, 2016, through the date last insured of December 31, 2016. (AR 21).

B.      **Issues for Review**

Mr. M raises two arguments on judicial review. Both arguments center on the following portion of his RFC: that he can "frequently interact appropriately with the general public, supervisors, co-workers, and peers during an eight-hour workday; [and] frequently respond appropriately to changes in the work setting during an eight-hour workday." Mr. M argues that the ALJ erred in assessing these limitations on two fronts. First, Mr. M contends that "it is reasonable to conclude" that these RFC findings are work preclusive on their face, warranting remand for an award of benefits. [DE 11 at 13]. Second, Mr. M contends that, in making these findings, the ALJ still failed to explain the nature of the social interactions in which Mr. M could engage or the nature of the changes in which he could respond. Mr. M contends that, without such qualitative limitations, the RFC insufficiently accounts for his moderate limitations in interacting with others and adapting or managing himself, warranting remand for additional proceedings.

In response, the Commissioner contends that Mr. M's first argument that the ALJ's use of the word "appropriately" alters the meaning of the RFC assessment is unreasonable and unsupported by the evidence or legal authority. The Commissioner also maintains that Mr. M's argument that the ALJ was required to include qualitative

limitations is contrary to controlling precedent. The Commissioner contends that the ALJ considered the relevant evidence and sufficiently explained the mental limitations assessed in the RFC such that the ALJ's decision should be affirmed.

### C. Discussion

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. "A 'regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* The RFC is the *most* someone "can do despite their mental and physical limitations." 20 C.F.R. § 404.1545(a)(1) and § 416.945(a)(1); SSR 96-8p(5) (emphasis added). The RFC is crafted based on "all the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' – i.e., opinions about what the individual can still do despite his or her impairment(s) – submitted by an individual's treating source or other acceptable medical sources." SSR 96-8p.

When crafting a claimant's RFC, an ALJ must follow a two-step sequential process to determine whether a claimant's symptoms can be accepted as consistent with objective medical evidence and other evidence. First, the ALJ must determine whether there are underlying medically determinable mental or physical impairments that could reasonably be expected to produce the claimant's pain or symptoms. Second, if there are underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the

9

extent to which they limit the claimant's work-related activities. *See* 20 C.F.R. § 416.929(a). The ALJ evaluates the intensity, persistence, and limiting effects of symptoms by considering a claimant's subjective statements and complaints related to their symptoms and pain, as well as any description medical sources and other nonmedical sources provide about how these symptoms affect a claimant's ability to work. *See* 20 C.F.R. § 404.1529(a).

The ALJ must also consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence . . . " 20 C.F.R. § 404.1529(c)(4). Accordingly, a claimant's alleged symptoms are determined to diminish their capacity to work "to extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical and other evidence." 20 C.F.R. § 404.1529(c)(4). The "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts." S.S.R. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). This "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021).

    **1.**    **Whether "Frequently Interact Appropriately" and "Frequently Respond Appropriately" is Work-Preclusive**

Mr. M's first argument challenges the ALJ's wording of the social interaction and adaptivity limitations in his RFC. The ALJ's hypothetical to the VE on this point states: "Please assume a hypothetical individual . . . can interact appropriately with the general

public, supervisors, workers or peers frequently during an eight-hour workday . . . . The individual can respond appropriately to changes in the work setting frequently during an eight-hour workday . . . ." (AR 49). Mr. M's representative at the administrative hearing also posed questions to the VE on these issues:

> [I]f I took the same hypothetical as proposed by the Judge . . . in regards to interaction, I'm going to knock it down to no interaction with the public and only occasional interaction with coworkers and supervisors . . . ."
> "[I]f a hypothetical individual was unable to respond appropriately to any changes . . . ."
> "[I]f instead of no [INAUDIBLE] to respond to any changes in the work setting; if we used occasionally . . ."

(AR 51-54).

Mr. M explains that the RFC limitation that he could only "frequently interact *appropriately* with the general public, supervisors, co-workers, and peers during an eight-hour workday and only frequently respond *appropriately* to changes in the work setting during an eight-hour workday" is inherently work preclusive. [DE 11 at 23 (emphasis added)]. Mr. M explains that frequently is defined to "mean[] that the activity or condition occurs one-third to two-thirds of an 8-hour workday" *citing* Program Operations Manual System, DI 25001.001 Medical and Vocational Quick Reference Guide, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001. Mr. M thus posits that his assessed RFC means that "occasionally (i.e., up to one-third of the time) [he] would be unable to respond appropriately during interactions with others" – meaning that "up to one-third of [his] interactions with others would be inappropriate." [DE 11 at 14 (punctuation omitted)]. Similarly, Mr. M states that "if [he] can only "'frequently respond appropriately' to changes in the work setting" it suggests "that occasionally [he] would be unable to respond appropriately to changes in the work

11

setting"—meaning that "up to one-third of [his] responses to changes in the work setting would be inappropriate." [*Id.* (punctuation omitted)]. Mr. M contends that these limitations are reasonably work preclusive, as two of the "abilities and aptitudes necessary to do most jobs" include "[r]esponding appropriately to supervision, co-workers, and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1522(a)(5)-(6).

In response, the Commissioner contends that Mr. M's reading of his RFC is a "hyper-technical, non-common sense reading." [DE 17 at 1]. The Commissioner maintains that "the reasonable reading of the RFC limitations is that Plaintiff could interact with others and respond to changes no more than frequently and would do so appropriately." [DE 17 at 8]. The Commissioner also maintains that VE understood this and accordingly "offered jobs requiring no more than frequent interaction and frequent changes, [and Mr. M] would simply not reach a point where his response to changes would allegedly become inappropriate." [*Id.*]

At the outset, Mr. M cites no legal authority to support his interpretation of his RFC limitations. "A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority . . . forfeits the point." *Mathis v. N.Y. Life Ins. Co.*, 133 F.3d 546, 547 (7th Cir. 1998). Moreover, Mr. M's arguments also appear to rest on a misunderstanding of how "frequently" is defined in this context. As stated, Mr. M contends that frequently is defined as "the activity or condition occurs one-third to two-thirds of an 8-hour workday," relying on the definition included in SSA's Program Operations Manual

System, DI 25001.001 Medical and Vocational Quick Reference Guide. But Mr. M fails to note that this definition is provided in the context of physical demands and environmental conditions. *See id.* The manual does not use the definition in reference to nonexertional limitations such as interactions with others or responding to change. Indeed, courts have distinguished these durational definitions in the context of an ALJ's nonexertional limitations. *See Reynolds v. Kijakazi*, 25 F.4th 470, 474 (7th Cir. 2022) (finding claimant's definition of "occasional" from the Dictionary of Occupational Titles to be "misleading" because this definition "does not refer to interactions with others"); *see also Cardoza v. Kijakazi*, No. 1:20-CV-332-TLS-SLC, 2023 WL 2261498, at *5 (N.D. Ind. Feb. 28, 2023) ("Similarly, the definition of 'occasionally' in Social Security Ruling 83-10 is provided in the context of the exertional demands of strength activities (sit[t]ing, standing, walking, lifting, carrying, pushing, and pulling) throughout a workday."); *Celina K. v. Kijakazi*, No. 1:21-CV-00205-MG-JRS, 2022 WL 4462419, at *6 (S.D. Ind. Sept. 23, 2022) ("SSR 83-10, cited by Celina K., likewise refers to the amount of a worker would be expected to engage in exertional demand[.]").

Without more from Mr. M to support his argument or interpretation of the RFC limitations, the Court cannot find that these limitations are inherently work preclusive as Mr. M contends.

### 2. Failure to Include Limitations Regarding Qualitative Nature of Social Interactions or Nature of Changes

Mr. M also contends that the RFC fails to adequately account for the moderate limitations he was assessed under the Paragraph B Criteria. Mr. M maintains that the

RFC fails to adequately address: the qualitative nature of social interactions he could perform given evidence of his difficulties with interaction and executive functioning and the nature of changes in which he could respond at work, as well as his qualitative ability to regulate his emotional responses.

The Court begins by considering the ALJ's findings under the Paragraph B Criteria. At steps two and three of the five-step evaluation, the ALJ uses a special technique to evaluate mental impairments. *See* SSR 96–8p, 1996 WL 374184. The special technique determines whether a claimant has a medically determinable mental impairment and whether that impairment causes functional limitations. *See* 20 C.F.R. § 404.1520a. First, the ALJ evaluates the claimant's "pertinent symptoms, signs, and laboratory findings" to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). If the claimant has a medically determinable mental impairment, then the ALJ rates[4] the degree of functional limitation in four broad areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.* § 404.1520a(c)(3). These functional areas are known as the "B criteria." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 et seq.

In analyzing the Paragraph B criteria, the ALJ must incorporate "a specific finding as to the degree of limitation in each of the functional areas." *Id.; see also Craft*, 539 F.3d at 674–75; *Timothy H. v. Kijakazi*, No. 20 C 581, 2022 WL 4079433, at *3 (N.D. Ill.

---

[4] These functional areas are rated on a five-point scale of none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4).

Sept. 6, 2022). The ALJ's analysis must cite evidence that supports his conclusion for each functional area. *Timothy H.*, 2022 WL 4079433, at \*3. To satisfy the paragraph B criteria, the claimant must establish "extreme" limitation of one, or "marked" limitation of two, of the four functional areas. 20 C.F.R. Pt. 404, Subpt. P, App. 1. § 12.00(A)(2)(b).

First, regarding "understanding, remembering, or applying information," the ALJ found that Mr. M had a moderate limitation. The ALJ acknowledged that Mr. M's function report provided that his impairments affected his ability to understand, remember, and follow directions. Still, the ALJ also noted that Mr. M "retained the ability to watch YouTube, manage funds, drive, and prepare meals" and that other "mental status examination findings below showed [Mr. M] exhibited normal thought content, coherent thought processes, and average fund of knowledge." (AR 14). But the ALJ also acknowledged that Mr. M also had "a history of brain injury and CVA and occasions where examination findings showed circumstantial and illogical thought processes and limited judgment, insight, and memory." (*Id.*)

The next criterion involves "interacting with others," which is defined as the ability "to relate to and work with supervisors, co-workers, and the public." 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00(E)(2). The ALJ found that Mr. M had a moderate limitation. The ALJ acknowledged that Mr. M stated he interacts with family members and that mental status examinations also showed that he was "reasonable, cooperative, and exhibited normal speech." (*Id.*). But the ALJ also observed that examining providers found that Mr. M had guarded mood and blunted and constricted affect.

15

Next, regarding "concentrating, persisting or maintaining pace," the ALJ again found that Mr. M had a moderate limitation. The ALJ first noted that Mr. M stated in his function report that his impairments affected his ability to concentrate and complete tasks. Even so, the ALJ again observed that Mr. M had also stated that he retained the ability to watch YouTube, manage funds, drive, and prepare meals. The ALJ also observed that mental status examinations showed occasions of impulsivity as well as circumstantial and illogical thought processes. Still, the ALJ noted that examining providers found Mr. M to be alert, oriented, and attentive, and that he exhibited times of coherent thought processes and normal thought content.

Finally, regarding "adapting or managing oneself," the ALJ found that Mr. M had moderate limitations. The ALJ acknowledged that, in his function report, Mr. M provided that his impairments affected his ability to handle stress. Still, the ALJ pointed to Mr. M's ability to perform house household chores, drive, and manage funds. The ALJ also noted that mental status examination findings showed occasions where Mr. M had limited judgment and insight, circumstantial and illogical thought processes, and guarded mood. But as mentioned below, examining providers also found that Mr. M was alert, oriented, reasonable, and exhibited normal thought content, coherent thought processes, and an average fund of knowledge.

But the findings at Step Three regarding the Paragraph B criteria "are not an RFC assessment." SSR 96-8p, 1996 WL 374184, at *4. The subsequent RFC analysis must include "a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in

16

12.00 of the Listing of Impairments . . . ." *Id.*; *see also Powell v. Kijakazi*, No. 21-CV-01160-JES-JEH, 2023 WL 2653358, at *4 (C.D. Ill. Mar. 27, 2023).

      Mr. M claims that the ALJ failed to adequately consider the findings under Paragraph B criteria in the RFC assessment. Mr. M explains that the finding that he can "frequently interact appropriately" only addresses the duration of appropriate interactions he may have while failing to explain or address the type or quality of interactions he is able to have with others he may encounter in the workplace. Mr. M likewise contends that the limitation he can "frequently respond appropriately" to changes in the workplace fails to address his qualitative ability to regulate his emotional responses.

      As Mr. M contends, the Seventh Circuit has "repeatedly rejected the notion that a hypothetical . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019).  Limitations such as "occasionally" or "frequently" "go[] to the quantity of time spent with the individuals[.]" *Hurley v. Berryhill*, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018) (internal citation omitted). These terms do not address "quality of the interactions." *Id.* Accordingly, "[e]ven a job that requires only occasional interaction could require an employee to engage in prolonged or meaningful conversations during those few occasions." *Green v. Saul*, 2020 WL 4593331, at 4 (N.D. Ind. Aug. 11, 2020) (quotation marks omitted). Mr. M thus contends that limitations to frequent interaction and frequent changes are insufficient because these limitations, on their face, fail to

reasonably account for Mr. M's moderate limitations in social interactions or adapting and managing himself. In response, the Commissioner disputes that the record called for any qualitative limitations and contends that precedent shows that "there is no categorical rule as to how moderate ratings in paragraph B areas can be addressed in the RFC." [*Id.* at 10]. The Court agrees.

The ALJ assessed these limitations after discussing evidence that Mr. M had "reported mental symptoms including cognitive difficulties, irritability, depression, concentration difficulties, sleep difficulties, crying spells, fatigue, and mood swings (B1F/17-18, 20, 26, 31; B2F/25, 34, 52, 82, 93)." (AR 17). The ALJ also noted Mr. M's reports of "ongoing slowed information processing (B2F/52)." (*Id.*). The ALJ also acknowledged that "examining providers noted occasions where the claimant exhibited guarded mood, blunted and constricted affect, limited judgment and insight, impulsivity, circumstantial and illogical thought processes, and impaired recent memory (B1F/14-15, 18, 20-21, 27; B2F/34, 53, 82, 93; B3F/58)." (*Id.*) But the ALJ also discussed evidence that included unremarkable examinations reflecting benign findings such as cooperative, reasonable behavior, alert and attentive appearance, normal speech, normal thought content, coherent thought processes, and average fund of knowledge. [DE 17 at 5; AR 17 (citing (B1F/14-15, 17-18, 20-21, 27, 32, 53, 82, 87, 93; B3F/58)]. The ALJ also noted that Mr. M was treating "conservatively with prescribed medication, including Lamotrigine, Metoprolol Tartrate, Sertraline, and Duloxetine." (*Id.* citing (B1F/18, 31; B3F/64).

18

Mr. M bears the burden of providing evidence establishing the degree to which his impairments limit his functional capacity. *See* 20 C.F.R. §§ 404.1512(a), 404.1545(a)(3); *see also Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011). In support of the need for qualitative limitations, Mr. M summarizes portions of his treatment history. [*See* DE 11 at 5-8]. But many of the incidents Mr. M references occurred after his date last insured (December 31, 2016) or were specifically addressed by the ALJ in the decision. For instance, Mr. M references a time when he reported that the Veteran's Affairs system and his mother were engaged in a conspiracy against him (*see* AR 783-784, encounter note dated 2/18/2018); a time when he reported feeling "paranoid" because of his mother (*see* AR 750; encounter note dated 2/17/2021); as well as a time that was he was "not talking to people in general" (*see* AR 750, encounter note dated 5/17/2021). The ALJ reiterated the timeframe for consideration in the decision, stating "[t]he undersigned notes that the period at issue in this matter is limited to amended alleged onset date through the claimant's date last insured in December 2016." (AR 16). Moreover, Mr. M references times when providers noted that he exhibited circumstantial and illogical thought processes (AR 403), but the ALJ discussed this evidence when assessing the relevant RFC limitations.

Although Mr. M argues that the ALJ should have assessed qualitative limitations for his social interactions and ability to respond to change, he fails to indicate what qualitative limitations should have been assessed and how such limitations are supported by the evidence. Without more, the Court cannot find that remand is appropriate on this basis. *See, e.g., Reynolds v. Kijakazi,* 25 F.4th 470, 474 (7th Cir. 2022)

19

(affirming where there was no evidence of qualitative interaction limitations in the claimant's medical records); *Pytlewski v. Saul*, 791 F. App'x 611, 616 (7th Cir. 2019) (finding durational limitations to social interactions to be acceptable under the substantial evidence standard considering evidence of the claimant's "cooperative behavior"); *Elizabeth L. v. O'Malley*, No. 21 CV 3907, 2024 WL 640953, at *4 (N.D. Ill. Feb. 15, 2024) (affirming where claimant failed to indicate what additional social interaction limitations were required); *Danielle S. v. Kijakazi*, No. 20-CV-50338, 2023 WL 8190726, at *4 (N.D. Ill. Nov. 27, 2023) (affirming social interaction limitations assessed by the ALJ after claimant failed to provide adequate evidence that the RFC did not account for her limitations); *Natasha W. P. v. Saul*, No. 20 C 866, 2021 WL 1209024, at *2 (N.D. Ill. Mar. 31, 2021)(finding that ALJ's failure to incorporate social interaction and adaptive limitations did not require remand).

## IV.  CONCLUSION

For the reasons stated above, the Court **AFFIRMS** the Commissioner's decision.

**SO ORDERED** this 12th day of March 2025.

s/Scott J. Frankel
Scott J. Frankel
United States Magistrate Judge
